**SO ORDERED.**

**SIGNED this 22 day of December, 2009.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JAMES KENNETH CURRY and | ) | Case No. 09-41307 |
| DIANA MARIE CURRY, | ) | Chapter 13 |
|         Debtors. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S
### OBJECTION TO DEBTORS' HOMESTEAD EXEMPTION,
### OBJECTION TO CONFIRMATION AND
### MOTION TO DISMISS

      This matter is before the Court on the Chapter 13 Trustee's Objection to Confirmation of

Debtors' Plan[1] and Motion to Dismiss;[2] both assert that the plan does not meet the best interest of

creditors test. The Trustee has also filed an Objection to Debtors' Claim of Exemptions[3] in real

estate located in Pleasanton, Kansas. The Court has heard the evidence and is prepared to rule. The

_____

[1]Doc. 16.

[2]Doc. 17.

[3]Doc. 19.

objection to the plan, the objection to the exemption and the motion to dismiss are core proceedings over which this Court has jurisdiction to enter a final order.[4] The parties stipulate to jurisdiction and venue.

## I.  FINDINGS OF FACT

Debtors, James and Diana Curry ("Debtors"), filed a Petition under Chapter 13 of the Bankruptcy Code on August 5, 2009.  On the date of filing, Debtors jointly owned a home in Pleasanton, Kansas, which is located about 120 miles from Topeka, Kansas.  They listed the address for the Pleasanton house as their current street address on the Petition and in response to Question 15 of the Statement of Financial Affairs (seeking "prior address of debtor" within three years).  Debtors stated that they lived at the Pleasanton address from "1997 to Present," and at 1122 SW Jackson, E 13, Topeka, Kansas from "8/07 to Present while school is in session."  They claimed the Pleasanton home as exempt on Schedule C, and owe several years' real estate taxes on the property.

The Pleasanton house was Mrs. Curry's childhood home, which she ultimately inherited from her mother in 1999 or 2000.  Debtors moved into the house prior to the inheritance to take care of Mrs. Curry's mother before her death.  The house is fully furnished, utilities are connected most of the time, and they have never rented the house to others.  During the school year, which begins in middle to late August, Mr.  Curry lives in a two bedroom, rent-subsidized apartment in Topeka. Utilities are included in the rent, which is $269/month.  Mrs. Curry shares her time between Pleasanton and Topeka, but may spend more time in Topeka.  During the school year,  Mr. Curry spends most of him time in Topeka, so he can perform his bus driving duties.  On weekends, holidays and during the summer, when school is not in session, Mr. Curry lives in both Pleasanton

---

[4]28 U.S.C. § 157(b)(1), (b)(2)(B) and (L) (core proceeding) and 28 U.S.C. § 1334(b).

Case 09-41307   Doc# 34   Filed 12/22/09   Page 2 of 12

and Topeka, commuting in the same fashion as his wife. However, after gas prices rose, the Currys reduced their traveling between Topeka and Pleasanton and returned to Pleasanton less often.

Mr. Curry draws disability benefits. As a result, he can only work part-time. He testified that he had difficulty finding part-time work that was conducive to his physical limitations in or near Pleasanton, which is a very small town. He was, however, able to find work in Topeka as a school bus driver, beginning in August 2007. On cross examination, the Trustee asked Mr. Curry why he could not drive a bus closer to Pleasanton. The Trustee stated that there were fair sized cities near Pleasanton that would seemingly need bus drivers. Mr. Curry did not have an answer to this question other than stating that his extended family lives in Topeka and that he belongs to a Topeka Shriner's organization. The inference was that he simply preferred living in Topeka over cities closer to Pleasanton.

The Debtors perform the following activities in Topeka: 1) vote; 2) attend church; 3) receive free medical care, which is not available in Pleasanton; 4) bank; 5) insure and license their vehicles; 6) receive mail;[5] and 7) Mr. Curry works in Topeka. In addition, the majority of their scheduled debts were incurred in Topeka. They tithe to a church in Pleasanton when they are financially able, occasionally attend a Masonic Lodge in a town fairly close to Pleasanton, and Mrs. Curry's extended family lives in the Pleasanton area. On cross-examination, the Trustee established that based on Mr. Curry's hours, wages, rent and travel costs between Topeka and Pleasanton, he receives very little financial benefit from his job as a bus driver in Topeka.

---

[5]One of the exhibits received was a letter from the Trustee to Debtors at the address contained in their Petition, marked "Return to Sender, Attempted - Not Known - Unable to Forward."

The most critical fact elicited at trial from both Debtors is that they consider the Pleasanton house their home. Even though they have either needed or elected to spend a great deal of time in Topeka over the last 2.5 years because of Mr. Curry's job, hobby, and family, they have always intended to permanently return to Pleasanton.

**II. ISSUE:**  **Whether Debtors are entitled to claim the Pleasanton house as their exempt homestead, specifically, whether the Trustee has met his burden of proving that debtors permanently abandoned the house.**

## III. ANALYSIS

Section 522 of the Bankruptcy Code governs exemptions.[6] Subsection (b) allows the states to prohibit their citizens from choosing the federal exemptions set forth in subsection (d) and to require the use of state exemptions. Kansas has opted out of the federal plan and enacted its own exemptions.[7] A debtor's exemption rights are determined as of the date of the filing of the petition.[8]

Debtors are attempting to exempt the home where Mrs. Curry has resided the majority of her life since childhood and where both have lived sporadically since at least 1999-2000, and maybe before. The Trustee argues that circumstantial evidence indicates that Debtors have effectively abandoned this homestead, and that they are not entitled to any homestead exemption, since they mostly live in a rented apartment.

---

[6] 11 U.S.C. § 522.

[7] K.S.A. 60-2312.

[8] 11 U.S.C. § 522(b); *Mansell v. Carroll (In re Mansell)*, 379 F.2d 682, 684 (10th Cir. 1967) (holding "[i]n a bankruptcy proceeding the determination of what property is exempt is made as of the date of filing ...."); *Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. at 210 (holding that debtor's right to exemption is determined as of date petition is filed).

4

Under Kansas law, the party claiming homestead protection has the burden of proving the establishment of the homestead.[9]  In bankruptcy, however, Rule 4003 of the Federal Rules of Bankruptcy Procedure governs exemptions; subsection (c) provides:  "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."  This means that the claimed exemption is presumed to be valid, and the Trustee has the burden of producing positive and clear evidence to rebut the presumption.[10]  If he does so, the burden shifts back to the Debtors to come forward with evidence that demonstrates that the claimed exemption is proper.[11]  The party claiming the homestead interest may testify as to his or her intent regarding a proposed return to the property, and such testimony, if credible, is sufficient to support a finding that the property remains a homestead.[12]

To determine the validity of Debtors' claimed homestead exemption, the Court must look to applicable Kansas law.[13]  The Kansas Constitution provides for a homestead exemption of one acre within the city limits;[14] the Trustee stipulates that the Pleasanton house is within the city limits

---

[9]*See Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 344 & 349 (1974); *Bellport v. Harder*, 196 Kan. 294 (1966).

[10]*In re Estate of Fink*, 4 Kan. App.2d 523, 527-28 (1980) (holding that party attempting to defeat exemption must show by positive and clear evidence that the homestead has been abandoned, as there is a presumption that once established, the homestead continues unless the contrary is shown).  *Also see In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005) (holding that objecting party bears burden of proof on an objection to a claimed exemption by a preponderance of the evidence that the exemption was improper); *Bellport v. Harder*, 196 Kan. 294 (1966) (holding that once debtor establishes that a homestead interest exists, burden is on party attempting to defeat that interest by positive and clear evidence that homestead has been abandoned; presumption that once established, homestead continues unless contrary is shown).

[11]*In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

[12]*In re Estate of Fink*, 4 Kan.App.2d at 528.

[13]*In re Robinson*, 295 B.R. at 152 (citing *In re Lampe*, 331 F.3d at 754.

[14]*See* Kansas Const., Art. 15, §9.

5

and that the land upon which it rests does not exceed one acre. The Kansas legislature's statutory version is a bit more expansive; K.S.A. 60-2301 provides, in pertinent part:

> A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists. . . .

"In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be construed liberally in favor of exemption.'"[15] Finally, the test for whether a homestead has been abandoned is the removal from the property with the intent not to return.[16]

The Trustee very effectively compiled subjective evidence suggesting that the Debtors abandoned their Pleasanton home, and transferred their domicile to Topeka. As noted above, Mr. Curry lives in Topeka the majority of the year, while Mrs. Curry was unable to quantify the percentage of time she spends in the two cities. Mr. Curry votes in Topeka, and they both attend church and see doctors in Topeka. Debtors incurred most of their debts in the Topeka area, and they have insured and licensed their vehicle there.

However, the Court gathered that Mr. Curry takes on most of the responsibility for the business needs of the family. His bus driving job requires him to be in Topeka over eight months of the year. His work schedule allows him time in the middle of the day to go to doctors and conduct business. After taking his schedule and the availability of free health care in Topeka into account, along with the testimony concerning Debtors' intent to return to the Pleasanton home and Kansas

---

[15]*In re Lampe*, 331 F.3d at 754 (quoting *In re Ginther,* 282 B.R. 16, 19 (Bankr. D. Kan. 2002)).

[16]*Matter of Estate of Phillippe*, 23 Kan. App. 2d 436, 438 (1997).

case law on homesteads, the Court has reached the conclusion that the facts showing abandonment are not strong enough to defeat the homestead exemption.

The Kansas appellate courts have fiercely protected the homestead exemption, once established, under facts that were less favorable to the debtors than the circumstances in this case. The Court will briefly outline (in reverse date order) a sample of the numerous Kansas cases where the appellate courts have upheld a homestead exemption, in spite of considerable evidence showing that the debtors had abandoned the property, because the debtors demonstrated an intent to return.

> *Matter of Estate of Phillippe*:[17]
>
> Debtor's father moved into a nursing home in 1991 because debtor could no longer provide care in family home after father diagnosed with cancer. Court affirmed that creditor had not met its burden of showing, by positive and clear evidence, that father did not intend to return to the residence after his admission into the nursing home, denying SRS request to recover its lien while it was occupied as homestead by family member.

> • *Matter of Fink's Estate*:[18]
>
> Debtor left her farm to take a job in Leavenworth (and to escape her husband who had a variety of problems) for approximately three years, returning on weekends to care for her husband after he became ill. After he died, she kept her Leavenworth house and job, intending to return to the farm after her retirement. She deeded 24 acres of the 70 acre tract to her daughter and the farmhouse was demolished, but her daughter was building a house on the land, wherein an apartment was constructed for her to live after her retirement. Court still upheld the homestead.

> • *Bellport v. Harder:*[19]
>
> Debtors moved to Colorado in 1958 for health and employment reasons, but continued to look for jobs in LaCrosse, where their home was located. They returned to LaCrosse in 1962, but then moved back to Colorado at the end of 1962 because

---

[17]23 Kan.App.2d 436, 438, (Kan.App. 1997).

[18]4 Kan.App.2d 523, 529 (Kan.App. 1980).

[19]196 Kan. 294 (1966).

of lack of employment.  They rented the house, and ultimately conveyed it to their daughter.  Before that conveyance, a creditor had filed a lien.  Notwithstanding these facts, the Court held "occupancy" does not necessarily mean "actual occupancy" or "physical presence," and in fact, contemplates temporary absences, and upheld the homestead against the creditor's claim that arose before the conveyance.

- *Farmers' State Bank of Belvue v. Weeks:*[20]

  Debtor owned 132 acres, but lived with her five children in Belvue.  She moved to Topeka in 1927 to educate her children and sold the Belvue house in 1929, at which time she moved some of her furniture and household goods to Topeka where the children attended school, and a substantial part of the same to the farm.  She then rented the farm to her son, reserving two rooms in the house for herself and the family.  She then leased all but the two rooms of the seven room house to a third party in 1932, also reserving a part of the hay mow and some grain bins.  Debtor testified she considered the farm her homestead and had only gone to Topeka temporarily to educate her children, that she had gone to the farm on week-ends and when school was out, and that she intended to live on the farm permanently as soon as the children had finished school. Court affirmed holding of trial court that she had never abandoned the property because she always retained the intent to return to it.

- *People's State Bank v. Hill:*[21]

  Debtors moved from their 80 acre farm to Webb City, Missouri, selling most of their outside personal property, and moving part, and leaving part ,of their household goods at the farm with a tenant.  In Webb City, they purchased a 7-acre tract and made some improvements on it, telling others they were "trying out" Missouri and were uncertain whether they would abandon their home in Kansas and take up a permanent residence in Missouri.  Not surprisingly, they "formed a dislike for the Missouri situation" and decided to return to their Kansas home.  The Court upheld the homestead exemption, finding they never abandoned the Kansas homestead.

- *Citizens' State Bank of Sabetha v. Bird:*[22]

  Debtor moved to Pennsylvania in 1924 after selling his personal property.  He testified that he had no intention of leaving Sabetha permanently, or of abandoning his homestead, and that his absence was temporary in character.  He testified it was

---

[20]138 Kan. 376 (Kan. 1933)

[21]125 Kan. 308 (1928).

[22]121 Kan. 617 (1926).

8

his intent to return to and occupy the property. Finding that "[t]he affairs of men are too varied to permit them to occupy their homesteads every moment of time," and finding that evidence supported the trial court's finding that Debtor did not intend to permanently abandon his Sabetha home, the appellate court affirmed the trial court.

- *Fredenhagen v. Nichols & Shepard Co.*[23]

  Debtors moved from their Linn County farm in 1912 to Kansas City to educate their children. Trial court believed testimony that debtors did not have intent to abandon their homestead before the time they conveyed the property, in April 1912, to plaintiff.

- *Palmer Oil & Gas Co. v. Parish:*[24]

  Although debtors listed their farm with a real estate agent and moved to Missouri, leaving household goods and some livestock, they never intended to abandon the farm until such time as they could trade the land in Kansas for land in Missouri. Accordingly, the appellate court affirmed the trial court's finding that plaintiff had failed to show debtors did not intend to ever return.

- *Pitney v. Eldridge:*[25]

  The owner of a 40 acre homestead leased a portion for 10 years with a privilege of renewal for another 10 years, providing for re-entry on default. A fence was erected separating the leased portion of the premises from that reserved to the owner. Finding that a "temporary absence from or nonoccupancy of the premises, or a portion of the same, where there is an intention to return and reoccupy them, does not operate as a waiver or abandonment of the homestead right. So, it has been held that a mere temporary absence, although it may be prolonged for months or years, is not sufficient to devest the homestead right; and the fact that the premises were rented during the temporary absence is not of itself sufficient to destroy their homestead character."[26] The court held that even the leased premises remained a part of the homestead, so long as it did not become another person's homestead nor was it used in a manner inconsistent with the homestead interests of the owners.

---

[23]99 Kan. 113 (1916).

[24]61 Kan. 311 (1900).

[25]58 Kan. 215 (1897).

[26]*Id.* at 218-19.

9

- *Schlaudt v. Hartman:*[27]

  Debtor lived on tract for 30 years, when he moved to another farm in county, and then rented several farms over the years, not moving back to the original tract until it was levied on for payment of a judgment. During that time, the tract was rented to others. Debtor voted in the several townships in the county in which he lived (not the one where the tract was), he was elected road overseer in one of those townships, he was a candidate for the office of sheriff in Reno County and advertised himself as a farmer candidate from the township in which he was then living. Notwithstanding this evidence, the court found that Debtor intended to return to the tract. Because there was "evidence on which the court could find either way," the appellate court sustained the trial court's finding that debtor had never abandoned the property as he intended to return to it.

- *Garlinghouse v. Mulvane:*[28]

  Debtor left Kansas in 1885, on advice of his wife's doctor, who said she needed to be in a warmer climate. He took a new job in Texas and leased the homestead to a third party, intending not to return until his wife's health improved (which it had not by the time of this decision in 1888). Reversing the trial court, the appellate court noted that "[w]here one goes away leaving behind him part of his family, his household goods, his home, and the circumstances under which he goes are such as to indicate only a temporary absence, such facts, coupled with the statement of his intention to return, uncontradicted by other evidence, is conclusive and binding. . . ."[29]

- *Hixon v. George:*[30]

  A husband and wife, who "temporarily" left their Kansas homestead in 1872 to work in Indian country in the service of the United States, and who were still living and working in that capacity when the appeal was decided in 1877, did not lose their homestead rights, so long as they intended to return to their homestead, and did not

---

[27]105 Kan. 112 (1919).

[28]40 Kan. 428 (1888).

[29]*Id.* at 432-33.

[30]18 Kan. 253 (1877). *But see Atchison Sav. Bank v. Wheeler's Adm'r*, 20 Kan. 625 (1878) (holding that person who acquired new homestead who exercised his political rights of that new place outweighed his claim for exemption on the ground of an intention to return to the farm and some point in the undefined future). 20 Kan. 625, 631-33 (Kan. 1878)

10

acquire another residence. The fact that they rented the homestead during their absence was deemed irrelevant.

All these cases have one common element:  the trier of fact believed the debtors when they indicated an intent to return to the homestead.  Under the facts of this case, this Court believes these Debtors never intended to permanently abandon their home in Pleasanton and always had the intent to return to it.  This is buttressed by the fact that they maintain the Pleasanton home, insure it, return to it from time to time, keep it fully furnished, maintain the utilities part of the time, and have never rented it, as many debtors have in the cited Kansas cases.  And although Mr. Curry is registered to vote in Topeka, *Schlaudt v. Hartman*[31] held that voting in a jurisdiction away from the homestead is not enough to show abandonment of a homestead.  And in *Schlaudt*, the debtor even held elected office in the new jurisdiction.

The Court finds that Mr. Curry established an apartment in Topeka because he was able to find work that was both conducive to his disability and that he enjoyed doing.  He always considered the Pleasanton house his permanent home, to which he intended to return once he no longer needed the bus-driving job.  As to Mrs. Curry, this was her inherited childhood home; she never intended to abandon the home.  When she was in Topeka to be with her husband, she always intended to return to the Pleasanton home.  Based on these facts, the Court finds that the Currys have not abandoned their homestead in Pleasanton, Kansas.

III.     CONCLUSION

---

[31]105 Kan. 112 (1919).

11

Once a debtor establishes that a homestead interest exists in the first instance, which the Trustee here never really disputed, the party attempting to defeat the homestead exemption has the burden of establishing "by positive and clear evidence" that the homestead has been abandoned. Debtors demonstrated that they established the homestead as early as the 1990s, so it became the Trustee's burden to demonstrate both that Debtors had permanently left the Pleasanton home, and that they had the intent to not return to it. Although there was considerable evidence demonstrating that Debtors had left the Pleasanton home, at least eight months of the year, for Mr. Curry's employment in Topeka, there was undisputed evidence that the parties always retained the intent to return to the Pleasanton home at some point in the future.

Under Kansas law, if Debtors intended to return to the Pleasanton home, then it remains their homestead. For that reason, the Court overrules the Trustee's objection to confirmation, based on the best interest of creditors test, the Trustee's objection to exemption of the Pleasanton home and his motion to dismiss.

# # #

12